# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

|  |  |
|---|---|
| KROY IP HOLDINGS, LLC, § § § § | |
| Plaintiff, § | Civil Action No. 2:12-cv-800 (LEAD CASE) |
| v. § | |
|  § | The Honorable Rodney Gilstrap |
| SAFEWAY, INC., § | Magistrate Judge Roy S. Payne |
|  § | |
| Defendant. § | JURY TRIAL DEMANDED |
|  § | |
| KROY IP HOLDINGS, LLC, § § § | |
| Plaintiff, § | |
| v. § | Civil Action No. 2:13-cv-141 |
|  § | |
| THE KROGER CO., § | JURY TRIAL DEMANDED |
|  § | |
| Defendant. § | |

**PLAINTIFF'S REPLY BRIEF ON CLAIM CONSTRUCTION**

# TABLE OF CONTENTS

**Page**

I. THE PROPER CONSTRUCTION OF DISPUTED CLAIM TERMS ............................... 1

    1. Term No. 1 – "incentive program" ........................................................... 1

    2. Term No. 2 – "award" ................................................................................ 1

    3. Term No. 3 – "automated award fulfillment" ........................................... 1

    4. Term No. 4 – "host" .................................................................................... 2

    5. Term No. 6 – "provider" ............................................................................ 3

    6. Term No. 7 – "an inventory management system" .................................. 3

    7. Term No. 8 – "associated with each" ....................................................... 4

    8. Term No. 10 – "sponsor-selected specific award unit item" and Term No. 11 – "award unit item" ............................................................................... 4

    9. Term No. 12 – "demographic . . . preferences" and Term No. 13 – "psychographic preferences" .................................................................... 6

    10. Term No. 14 – "a sponsor-selected consumer user" ................................ 6

    11. Term No. 15 – "geographic location for fulfillment" and Term No. 16 – "a sponsor-selected geographic location for fulfillment" ............................. 7

II. CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ACTV, Inc. v. Walt Disney Co.*,
    346 F.3d 1082 (Fed. Cir. 2003) ................................................................................ 10

*AIA Engineering Ltd. v. Magotteaux Intern. S/A,*
    657 F. 3d 1264 (Fed. Cir. 2011) ................................................................................ 10

*Gemstar-TV Guide Int'l, Inc. v. ITC*,
    383 F.3d 1352 (Fed. Cir. 2004) ................................................................................. 10

*Honeywell Inc. v. Victor Co. of Japan, Ltd.*,
    298 F.3d 1317 (Fed. Cir. 2002) ................................................................................... 8

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999) ................................................................................... 2

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ..................................................................................... 2

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
    355 F.3d 1361 (Fed. Cir. 2004) ................................................................................... 2

*Middleton, Inc. v. Minn. Mining & Mfg. Co.*,
    311 F.3d 1384 (Fed. Cir. 2002) ................................................................................... 3

*Net Navigation, LLC v. Cisco Sys., Inc.*,
    2012 U.S. Dist. LEXIS 174843 (E.D. Tex. Dec. 11, 2012) ....................................... 10

*Northrop Grumman Corp. v. Intel Corp.*,
    325 F. 3d 1346 (Fed. Cir. 2003) .................................................................................. 9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ................................................................................... 2

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) .................................................................. 1

*Purdue Pharma LP v. Endo Pharm. Inc.*,
    438 F. 3d 1123 (Fed. Cir. 2006) .................................................................................. 8

*Tanabe Seiyaku Co. v. US Intern. Trade Comm'n*,
    109 F.3d 726 (Fed. Cir. 1997) ..................................................................................... 9

## I. THE PROPER CONSTRUCTION OF DISPUTED CLAIM TERMS[1]

### 1. Term No. 1 – "incentive program"

The specification states that "the phrase incentive program should be understood to include any program for creating incentives . . . ." and explains that such programs offer incentives to modify behavior. (*See* A030, '830 patent at 1:39-43 and 7:38-43.) Such an express definition applies to the claims, and the jury should be instructed on the stated meaning.

### 2. Term No. 2 – "award"

Defendants would also have the Court ignore the patentees' clearly expressed intent that: "the term 'award' should be understood to be synonymous and to encompass all types of incentives, including merchandise, coupons, points, cash, services and other forms of incentives." (A033 at 7:44-47.) This disposes of Defendants' attempts to suggest that online couponing systems fall outside the claim scope. (*See, e.g.,* Defs.' Br. at 1-2 and 13-14 (improperly redefining "award unit item" as limited to item in retailer's inventory and arguing this excludes coupons) and at 23-24 (improperly restricting "inventory management system" to system that tracks only retail merchandise).) The Court should give effect to the inventor's stated definition of "award," and thereby preclude irrelevant non-infringement arguments.

### 3. Term No. 3 – "automated award fulfillment"

Defendants do not answer the reasons explained by Kroy why their restrictive definition of this term is wrong. They feign that imposing the additional limitation "without customer action" would "harmonize[] the term with the intrinsic record." (Defs.' Br. at 22.) Yet this cannot be reconciled with the most crucial intrinsic evidence – the surrounding context of the claims themselves. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). Other claim language states the system capabilities or method steps necessary to provide

---

[1] The parties now agree that Term No. 5 – "first database," Term No. 9 – "sponsor-selected fulfillment," and Term No. 17 – "geographic proximity" do not require construction.

"automated award fulfillment" as claimed. This entirely precludes Defendants' argument. *See, e.g., Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1368 (Fed. Cir. 2004) (narrow construction erroneous because claim term not ambiguous and plain language of claim did not include the added limitations); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905 (Fed. Cir. 2004) (finding no ambiguity in the proposed term and thus no reason to read the term restrictively); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999).[2]

Defendants focus solely on Fig. 22 depicting "the basic steps of award fulfillment." (Defs.' Br. at p. 22, citing A50 at 41:2-9.) The figure is not a claim limitation, and, indeed, neither the figure nor the text even refers to "automated award fulfillment." Nor do they state or suggest that automated award fulfillment must occur "without customer action." The disclosed invention involves consumer interaction with a web site as part of award allocation and winning (*see, e.g.*, A036 at 13:40-54; 13:16-22) and additional consumer action during award redemption. (A040 at 22:15-22; *see also* A051-52 at 44:13-21, 46:64-47:3.)

### 4. Term No. 4 – "host"

The Court should either adopt the express definition from the patent specification or not construe this term at all. Defendants' construction inappropriately limits the host to providing incentive programs to "customers," whereas the specification more broadly states "to consumers, employees, suppliers, partners and the like . . . ." (A033 at 8:10-14.)

---

[2] Defendants cite one snippet from *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1360 (Fed. Cir. 2008), to suggest incorrectly that this Court must construe every single term that **they** deem to be ambiguous. Quite the contrary, *O2 Micro* expressly reaffirmed prior Federal Circuit precedent that a district court is not obligated to construe terms whose meaning is clear from the claims, "lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *Id.* at 1360, n. 2; *see also id.* at 1362. The Federal Circuit found that both parties had raised a fundamental dispute regarding the scope of a claim term, a dispute that the district court had acknowledged. In that particular circumstance, it held that the district court should have construed the term. *Id.* at 1360-62. *O2 Micro* certainly does not require this Court to construe terms that are ambiguous only when lifted out of their surrounding context, as Defendants repeatedly do.

2

5.  **Term No. 6 – "provider"**

Kroy's proposed definition of the term "provider" follows directly from its usage in the context of the claims as a whole, particularly in light of related specification passages. Defendants correctly observe that the word "provider" alone refers to an individual or company that provides something, and that the something depends on surrounding context. Here, the surrounding context includes claim language reciting "an inventory management systems associated with each of said plurality of providers . . . ." *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1387 (Fed. Cir. 2002) ("[T]he most important indicator of the meaning of [a claim term] is its usage and context within the claim itself."). The further context of the specification shows that this aspect relates to an inventory management system associated with "any individual or company that wishes *to provide awards and prizes* to be associated with incentive programs." (A033 at 7:54-62; *see also* A037 at 15:35-44 (emphasis applied).)

The assertion that the claim language "incentive programs of a plurality of providers" must refer to an "individual or company that provides an incentive program" begs the question. (Defs.' Br. at 27.) The claims do not recite providers *of incentive programs*. The full context shows that "provider" refers to one who provides awards. The parties have stipulated that the claims use the distinct term "sponsor" to refer to an individual or company that offers an incentive program.

6.  **Term No. 7 – "an inventory management system"**

This phrase is not ambiguous and therefore should not be construed. Here again, Defendants merely point to embodiments appearing in the specification when the claim language is broader. They emphasize an example implementation described as utilizing the inventory system of a retailer. But the claims recite "an inventory management system" and not an inventory management system *maintained by a retailer*. Also, the specification states that

3

"retailer" refers to "any individual or company that wishes to provide awards and prizes to be associated with incentive programs . . . ." (A033 at 7:54-56.) To avoid limiting the claims to require an inventory management system of a traditional retailer, the applicant more generally recited an inventory management system "*associated with* each of *said plurality of providers*" (emphasis supplied). Defendants have shown no basis for replacing the deliberately chosen language with "maintained by a retailer." The further detail requiring the system to "keep track of . . . available merchandise" is also extraneous to the broader claim language.

The prosecution history passage cited by Defendants actually undermines their argument. (Defs.' Br. at 24-25.) It states that the invention involves "communication with an inventory management system of multiple providers," which is consistent with the plain claim language. It also states that an "award unit can then be allocated from inventory to ensure availability," which confirms that the system may track "award units" and not just "merchandise."

       **7.**    **Term No. 8 – "associated with each"**

Here again, Defendants do not show that this phrase is ambiguous. Broad language is not per se ambiguous. The plain meaning of "associated with" is not limited to "connected through," let alone connected in the particular way stated in their complicated construction.

The passages presented from the specification do not relate to the limitation in which "associated with each" appears (*i.e.*, "inventory management associated with each of said plurality of providers"). They describe instead only a connection between an *award database* and an *inventory management system*. (Defs.' Br. at 25.) Defendants also point to Fig. 2, which depicts an EDI connection between a "member retailer computer" and a "retailer inventory system." This is also irrelevant. The claims at issue do not recite a member retailer computer.

       **8.**    **Term No. 10 – "sponsor-selected specific award unit item" and Term No. 11 – "award unit item"**

Defendants acknowledge that the specification expressly defines "award" broadly to

4

include all types of incentives, and that it further defines "award unit" in the manner reflected in Kroy's construction of the phrase "sponsor-selected specific award unit item." However, Defendants abandon those explicit definitions altogether, supposedly because of the word "item" in the claim. In explaining "award unit," the specification refers to "items stored in the award database" and then expressly indicates that "[t]he prize or reward and all of the corresponding identifying or classifying information can be characterized as an award unit." (A050 at 41:11-24.) Consistent with this disclosure that the database may contain multiple such "items," the word "item" simply implies a specific instance of a "sponsor-selected specific award unit."

Indeed, if the Court believes that adding the word "item" would improve Kroy's proposed construction, we would have no objection to modifying it to start with: "a specific award <u>item</u> . . . ." The word "item" does not affect the scope of this claim limitation. The ordinary meaning of "item" broadly connotes "a single article or unit included in a collection, enumeration, or series and that is specified separately." (A904, THE AMERICAN HERITAGE DICTIONARY 681 (2nd Ed. 1985).) The word "item" is broader than "retail items," a term which never appears in the asserted claims. Therefore, Defendants reliance on one sentence of the specification explaining that the invention "permits retailers to make *retail items* in their inventory available to sponsors for association with incentive programs as prizes," is misplaced. (Defs.' Br. at 14, citing A032 at 6:20-23 (emphasis supplied).) "Retail items" are only one type of "item" that can be associated with the incentive programs of the invention via a corresponding "award unit item." The mere mention of retail items in the specification provides no basis to change the claim scope as limited to providing "items available as an award from the inventory management system." Defendants' assertion that the resulting claim scope would exclude awards in the form of coupons only further exposes the error of their argument. The specification makes clear that the invention applies to coupon awards. (A033 at 7:44-47.)

5

Also, construing "sponsor-selected" to mean "selected by the sponsor (not the consumer)" would be overkill. The claim already states "sponsor-selected."

### 9. Term No. 12 – "demographic . . . preferences" and Term No. 13 – "psychographic preferences"

Defendants criticize Kroy's extrinsic sources as having been published either too early or too late, yet they fail to show that accepted definitions of these terms have changed significantly over time. Defendants' own reliance on both 1996 and 2008 sources contradicts their suggestion that Kroy's sources should be disregarded on the basis of temporal relevance.

We respectfully submit that the issue here is not who has the better dictionaries. The focus should be defining these terms in a manner that does not create jury confusion. Defendants' proposal creates confusion by incorporating the unexplained concept of direct observability. Defendants borrowed this from the following sentence of the Encyclopedia of Survey Research Methods:

> Because psychographics are not directly observable, as are many demographics, nor do they have a "factual" basis as do demographics, their measurement is less precise.

(Defs.' Br. at p. 18.) It is difficult to discern whether this cryptic comment conveys that "many demographics" are directly observable or are not directly observable. Either way, the comment confirms Kroy's stated concern that direct observability at best distinguishes psychographics from many but not all demographics.

We request that the Court adopt Kroy's construction of "psychographic preferences" and to either adopt Kroy's construction of "demographic preferences" or the compromise position suggested at p. 28 of Kroy's opening brief.

### 10. Term No. 14 – "a sponsor-selected consumer user"

The plain claim language describes award targeting as involving providing a "sponsor-selected specific award unit item . . . tailored [according] to demographic and psychographic

6

preferences of a sponsor-selected consumer user." The claims recite "a . . . consumer user" to invoke the default meaning "one or more" of the indefinite article "a." They do not recite the singular phrase "a particular consumer," or the additional limitation of selecting a particular consumer from a group based on demographic and psychographic criteria.

Defendants characterize a one sentence comment made by the applicant during prosecution as a disclaimer of broad claim meaning. They fail to mention that the rejection was for claim indefiniteness based under §112, ¶2, or that the applicant responded by defending the broad claim scope: "Just because a claim is broad in scope, does not make it indefinite." (A742, 10/23/2003 Office Action at 27.) The applicant then elaborated that the claims make clear "*how* a consumer user is awarded, and *how* a consumer user is selected by a sponsor based on demographic and psychographic (behavior based demographic) criteria . . . ." (*Id.* (emphasis supplied).) The claims do indeed describe how this is performed – *i.e.*, by providing a "sponsor-selected specific award unit item . . . tailored [according] to demographic and psychographic preferences of a sponsor-selected consumer user," just as the claim language says.

### 11. Term No. 15 – "geographic location for fulfillment" and Term No. 16 – "a sponsor-selected geographic location for fulfillment"

These terms plainly go together and should not be construed separately. Defendants have not shown an ambiguity in "sponsor-selected" or that any disclaimer occurred necessitating the unhelpful construction "selected by the sponsor (not the consumer)."

As to the "geographic location for fulfillment" aspect, Defendants do not dispute that "geographic location" has a broad ordinary meaning, which is much broader than a "specific store." Defendants concede that asserted claims never once recite a "specific store" or "specific location" for fulfillment." Defendants also do not dispute that their proposed construction would create inconsistencies with other claims such as dependent claims 4 and 19.

7

As explained in Kroy's opening brief, the specification describes how the invention permits a sponsor to designate multiple locations for fulfillment, and that the locations need not be store locations. Defendants nevertheless argue the claims should be limited based on passages describing an example embodiment in which the system consults the award database for geographic fulfillment locations selected by the sponsor and identifies the nearest retail location for the consumer to redeem an award. They also cite related passages from the prosecution history describing that capability. First, that embodiment presupposes the sponsor selecting multiple locations for award redemption. Otherwise there would be no purpose in the host determining the nearest location when an award is won. Second, none of the claims recite the additional steps of determining the nearest retail location or instructing the consumer user of that location. Thus, these passages have no bearing on the meaning of "a sponsor-selected geographic location" in the claims at issue.

Defendants also acknowledge that the article "a" in "a sponsor-selected geographic location for fulfillment" invokes a strong legal presumption that the plural meaning "one or more" was intended. (*Id.* at 10.) Clearly, in view of the broad disclosure in the specification, including examples where the sponsor designates multiple locations for fulfillment, that strong presumption is not overcome here.

Defendants' assertion that the applicant disclaimed a broader claim scope during prosecution lacks merit for multiple reasons. A statement made during prosecution is not a disclaimer unless the applicant made a "clear and unmistakable disavowal" of scope. *Purdue Pharma LP v. Endo Pharm. Inc.*, 438 F. 3d 1123, 1136 (Fed. Cir. 2006). General characterizations of the invention do not limit the scope of the claims. *Honeywell Inc. v. Victor Co. of Japan, Ltd.*, 298 F.3d 1317, 1326 (Fed. Cir. 2002). Nor do statements of the objectives or

8

advantages of the invention. *Northrop Grumman Corp. v. Intel Corp.*, 325 F. 3d 1346, 1355 (Fed. Cir. 2003).

Tellingly, the applicant never once amended the claims to require that the sponsor designate fulfillment at a specific store. If that were the basis of patentability, it certainly would have been in the claims. Nor did the applicant so restrict the claim scope by any assertions made to overcome the prior art. Defendants' portrayal of the Scroggie reference is incomplete and misleading in this regard. The Scroggie reference describes targeting offers "exercisable" in a consumer's geographic region. But the consumer, and not the sponsor, selects and determines a specific supermarket where an offer can be fulfilled. Scroggie expressly teaches, for example: "[a]ll the coupons printed will be specific to this selected supermarket, and invalid everywhere else." (Defs.' Br., Ex. D at 9:55-59.) As the passages cited by Defendants show, the applicant emphasized, and the examiner agreed, that the applicant's invention differs in that the sponsor designates the location of award fulfillment. Not a single passage supports their assertion that Scroggie or any other prior art was distinguished on the further grounds that the invention requires designating one specific store location for fulfillment. The applicant emphasized more generally that his invention provided more flexibility and convenience to sponsors as compared to Scroggie, and "allows the sponsor . . . to designate to the consumer where the award may be retrieved." (A744-45, 10/23/2003 Office Action at 29-30.)

Defendants' reliance on proceedings in European Patent Office is legally improper. The *Tanabe Seiyaku* case cited by Defendants has nothing to do with disclaimer. Rather, the case relates to whether statements made to foreign patent offices are relevant to claim scope under the doctrine of equivalents. *Tanabe Seiyaku Co. v. US Intern. Trade Comm'n*, 109 F.3d 726, 733 (Fed. Cir. 1997). In addition, the Federal Circuit has cautioned against the reliance on foreign prosecution for claim construction purposes. *E.g., AIA Engineering Ltd. v. Magotteaux Intern.*

9

*S/A*, 657 F. 3d 1264, 1279 (Fed. Cir. 2011). In any event, the applicant comments they emphasize from the EPO proceeding come nowhere close to evidencing a disclaimer of claim scope. Like many other passages on which Defendants rely, the EPO passage uses permissive language that the invention "can" direct a consumer to pick up an award at a specific geographic location or that it "allows" for this. Another cited passage from the EPO states that it "provides" for an item to be redeemed "at a specific location." Permissive language does not create a clear and unambiguous disavowal of claim scope. *E.g., Net Navigation, LLC v. Cisco Sys., Inc.*, 2012 U.S. Dist. LEXIS 174843 at *34 (E.D. Tex. Dec. 11, 2012) (Ex. 1) (refusing to limit claims based on permissive language including "can make" and "can be").

There is not a single instance anywhere in the intrinsic record where the applicant stated or even remotely suggested that the claimed invention requires the sponsor to designate a "specific location," let alone "a specific store where an item can be redeemed." Neither the specification nor the prosecution history contains any evidence that the inventor manifestly disclaimed or disavowed any particular subject matter from the meaning of "a sponsor-selected geographic location for fulfillment" reflected by the ordinary meaning of the chosen claim language. *See Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1364 (Fed. Cir. 2004) (noting that "the presumption of ordinary meaning will be 'rebutted if the inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'" (quoting *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1091 (Fed. Cir. 2003)).

## II.   CONCLUSION

For the reasons stated here and in Kroy's opening brief, we respectfully request that the Court adopt Kroy's constructions of the disputed terms.

Date: March 6, 2014 Respectfully submitted,

By: */s/ Austin Hansley*
Austin Hansley
**AUSTIN HANSLEY P.L.L.C.**
Texas Bar No.: 24073081
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
Telephone: (469) 587-9776
Facsimile: (855) 347-6329
Email: Austin@ www.TheTexasLawOffice.com
www.TheTexasLawOffice.com
**ATTORNEY FOR PLAINTIFF**
**KROY IP HOLDINGS, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 6th day of March 2014. Any other counsel of record will be served by first class mail.

>    */s/ Austin Hansley*
>    Austin Hansley
>    *Attorney for Plaintiff, Kroy IP Holdings LLC*