IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KROY IP HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:12-cv-800-WCB |
| | § | (LEAD CASE) |
| SAFEWAY, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Defendants' Objections to and Motion for Reconsideration of Claim Construction Memorandum Opinion and Order (Dkt. No. 108). The defendants' motion is DENIED.

On June 4, 2014, Magistrate Judge Payne issued a comprehensive claim construction order, in which he construed eight disputed terms from the claims of Kroy's U.S. Patent No. 7,054,830 ("the '830 patent"). Dkt. No. 90. The defendants have now sought reconsideration of seven of the court's eight claim constructions. Four of those seven challenges are raised summarily, without any detailed supportive argument.

1. The defendants first object to the construction of the terms "demographic preferences" and "psychographic preferences" in the claim construction order. The order construed the term "demographic preferences" to mean "preferences based on traits of a consumer, such as sex, marital status, income, occupation, and location." Dkt. No. 90, at 31. The order construed the

1

term "psychographic preferences" to mean "preferences associated with a consumer's attitudes, interests, values, opinions, lifestyles, or behaviors." Id. at 35.

The defendants argue that those terms, as construed, are indefinite under 35 U.S.C. § 112 ¶ 2 and that the claims in which they appear are therefore invalid. In addition, the defendants argue that the definition of "demographic preferences" is open-ended and provides no bounds to the "traits of a consumer" that would meet the claim limitations. The defendants also argue that the term "demographic preferences," as construed, would encompass "psychographic preferences," thus reading that term out of the claims altogether. In the event that the Court finds those terms are not indefinite, the defendants urge that the Court adopt their definition of the terms, which characterizes demographic preferences as those "based on directly observable consumer traits (e.g., sex, marital status, income, occupation, location)," and psychographic preferences as those "based on non-directly observable consumer traits (e.g., interests, opinions, values, attitudes, lifestyles)." Dkt. No. 108, at 3.

The Court holds that the terms "demographic preferences" and "psychographic preferences" are not indefinite. The evidence offered during claim construction indicated that the terms "demographic" and "psychographic" are used in marketing, among other fields, and have a reasonably well-understood meaning in that context. In response to the defendants' argument that the two terms should be distinguished on the ground that demographic traits are those that are directly observable and psychographic traits are those that are not directly observable, Judge Payne rejected that distinction as being more confusing than helpful. The Court agrees with Judge Payne's analysis and rejects the "directly/non-directly observable" distinction. As Judge Payne pointed out, some demographic traits, such as income, would not

seem to be "directly observable" as that term is used, so the "directly/non-directly observable" distinction does not serve well to distinguish demographic and psychographic traits. In the Court's view, the distinction between the two terms in the context of marketing is more accurately captured by the distinction between objective traits (such as a consumer's sex, age, marital status, income, occupation, and zip code) and subjective traits (such as a consumer's attitudes, interests, values, and opinions).

As Judge Payne noted, there is some overlap between the categories of demographic and psychographic traits. For example, "behavior" could, in some instances be regarded as a demographic trait (as in "the person is a regular voter" or "the person regularly attends church"), while in other instances "behavior" could be regarded as relating to a psychographic trait (as in "the person enjoys going fishing" or "the person is an avid amateur astronomer"). Nonetheless, the core meaning of the two terms is clear enough, and the two terms are distinct enough, that the fact that some examples of overlap can be imagined does not mean that the use of those terms renders the claims in which they are used invalid for indefiniteness.

Although the Court does not believe that the use of the terms "directly observable" and "not directly observable" would be helpful to the jury, and does not at this time think that the terms "objective" and "subjective" would necessarily add to the jury's understanding of the two terms, the Court will consider any possible refinement in the claim construction as the case proceeds if it appears that the refinement would more accurately reflect the meaning of the claims or assist the jury in understanding them. The Federal Circuit has made clear that a district court may adopt an "evolving" or "rolling" claim construction, in which the court's construction of claims evolves as the court better understands the technology and the patents at issue. <u>See</u>

Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd., 599 F.3d 1308, 1316 (Fed. Cir. 2010) (quoting Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d 1364, 1377 (Fed. Cir. 2005)) ("[D]istrict courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."); Utah Med. Prods., Inc. v. Graphic Controls Corp., 350 F.3d 1376, 1381-82 (Fed. Cir. 2003); Jack Guttman, Inc. v. Kopykake Enters., Inc., 302 F.3d 1352, 1361 (Fed. Cir. 2002); see also In re Acacia Media Techs. Corp., 2010 WL 2179875, at *4 (N.D. Cal. May 25, 2010) ("The Court finds that it would hinder litigation and the claim construction process to find a change in claim construction position to be vexatious or improper, since the Court's role is to determine the proper construction, which may entail an evolving understanding of the claim terms.").

2. The defendants' second objection to Judge Payne's claim construction order has to do with the construction of the term "sponsor-selected specific award unit item." Judge Payne construed that term to mean "a specific award item and all of the corresponding identifying or classifying information selected by a sponsor." Dkt. No. 90, at 24. The defendants' objection to that construction does not warrant lengthy treatment.

The defendants' principal objection to Judge Payne's construction of the term "sponsor-selected specific award unit item" is that after the phrase "selected by a sponsor," he did not add the words "and not a consumer." But by saying that the selection is made "by a sponsor," Judge Payne's construction makes clear that the selection is not made by a consumer. The defendants' complaint seems to be not that Judge Payne's construction is inaccurate, but that it is not emphatic enough in underscoring the point that the consumer does not make the selection. Underscoring, however, is a task best left to the attorneys in their arguments to the jury; it is not

4

necessary to a correct interpretation of the term and to the jury's understanding of the term as used in the claims.

In a separate portion of their motion, the defendants raise another objection to Judge Payne's construction of the term "sponsor-selected specific award unit item." That objection is raised in a single sentence ("Defendants further object to the construction of 'sponsor-selected specific award unit item' because the Order clearly errs in analyzing the claim language and specification"). Dkt. No. 108, at 5. Because that sentence is not accompanied by any supporting argument, it is difficult to discern exactly what the defendants object to in Judge Payne's analysis of the claim language and specification. From defendants' reference to the claim-construction brief they filed prior to the claim-construction proceedings, it appears that they object to Judge Payne's construction of the term "award unit item," which they had argued should be construed to mean "item available as an award from the inventory management system." Dkt. No. 52, at 13.

The Court rejects the defendants' argument on that point. Judge Payne pointed out that the terms "award" and "award unit" are specifically defined in the specification of the '830 patent. The term "award unit," in particular, is defined as referring to "[t]he prize or reward and all of the corresponding identifying or classifying information." '830 patent, col. 41, ll. 20-22. Based on that definition of "award unit," Judge Payne reasonably construed the term "award unit item" to mean "a specific award item and all of the corresponding identifying or classifying information." Dkt. No. 90, at 22.

3. The defendants object to the construction of the term "inventory management system," which Judge Payne construed to mean "at least one system that provides an inventory

of an item (e.g., merchandise) or type of items (e.g., coupons, points, services) recorded in the award database." Dkt. No. 90, at 45. Before Judge Payne, the defendants contended that the prosecution history required that the term "inventory management system" be construed to mean "a system maintained by a retailer to keep track of its available merchandise." Judge Payne rejected the defendants' proposed construction, however, because it was too restrictive, in that (1) the inventory management system referred to in the claims was not limited to "retailers," and (2) the awards were not limited to "merchandise." Id. at 42. Based on the prosecution history, Judge Payne also rejected Kroy's proposed construction on the ground that it "did not adequately capture the arguments made by the patentee." Id. at 44

In their motion for reconsideration, the defendants do not propose particular language that should be used in the construction of "inventory management system." Instead, they argue that Judge Payne overlooked that in the course of prosecution the applicant disclaimed an inventory management system that "cannot keep track of and control the allocation of items in inventory." Dkt. No. 108, at 5.

Contrary to the defendants' contention, Judge Payne did not disregard the prosecution history when he construed the term "inventory management system." He noted that the applicant had argued during prosecution "that knowledge and allocation of inventory is an important aspect of the recited inventory management system. It allows a sponsor to identify a store having an item or type of items and directs the consumer to that store." Dkt. No. 90, at 44. But Judge Payne properly found no disclaimer of claim scope of the type urged by the defendants.

The portion of the prosecution history on which the defendants rely (see Dkt. No. 108, at 5, citing Dkt. No. 52, at 24-25), touts the invention's capacity for "automated award fulfillment,"

which was unavailable in the prior art references under discussion. As the applicant explained, automated award fulfillment "includes sponsor designated or selected redemption whereby the sponsor of the award may select or determine what award unit . . . will be provided to the consumer user, by communication with an inventory management system of multiple provide[r]s and may designate the location of the redemption . . . ." Dkt. No. 49, at 41. That passage describes the automatic award fulfillment function that the invention can perform, in part by use of an inventory management system. But it does not in any way controvert Judge Payne's definition of that term, as there is nothing inconsistent between that description of the advantages of an inventory management system and Judge Payne's definition. Accordingly, the Court agrees with Judge Payne's construction and, in particular, with Judge Payne's conclusion that his construction is consistent with the prosecution history discussed in his order.

4. Judge Payne construed the term "a sponsor-selected geographic location for fulfillment" to mean "at least one specific geographic location selected by a sponsor for fulfillment." Dkt. No. 90, at 19-20. The defendants challenge that construction, asserting that it is contrary to the specification and the prosecution history. Judge Payne discussed both the specification and the prosecution history, and the defendants offer nothing of substance to show that his analysis was wrong.

The defendants appear to contend that during prosecution the applicant took the position that "a geographic location for fulfillment" referred to a single specific store where a reward can be redeemed. Judge Payne disagreed. First, he found that the specification of the '830 patent indicated that there may be multiple locations for prizes and that the locations of the prizes are not limited to a specific store. Dkt. No. 90, at 16-17. Second, in response to the defendants'

7

prosecution history disclaimer argument, Judge Payne ruled that the applicant did not seek to distinguish the prior art on the ground that in the invention the geographic location for the award was a specific store. Id. at 17-18. Third, Judge Payne found that the language used by the applicant during the prosecution of a foreign counterpart application did not support the defendants' proposed construction because the passages on which the defendants relied "are not absolute and use permissive language that the invention 'can' direct a consumer to pick up an award at a specific geographic location or that it 'allows' for this." Id. at 18-19. Finally, Judge Payne noted that the applicant had argued in the foreign application proceeding that the claims were distinguishable from the prior art because the prior art was "customer-oriented," rather than "provider-oriented." Id. at 19. Because the applicant focused on the sponsor selection rather than customer selection to distinguish the prior art, Judge Payne found that the foreign application prosecution history contained no disclaimer of claim scope. Id. The Court agrees with Judge Payne's analysis and rejects the defendants' cryptic challenge to it.

5. The defendants' final two complaints about Judge Payne's claim construction consist of one-sentence statements that the Court clearly erred "in analyzing prosecution disclaimer" or "in analyzing the specification." Dkt. No. 108, at 5-6. That is assertion, not argument. Judge Payne devoted several pages of analysis to each of those claim terms. The defendants' motion for reconsideration does not address his analysis in any way, but only asserts that his analysis was incorrect and his constructions were wrong.

a. Judge Payne construed the term "sponsor-selected consumer user" to mean "at least one consumer user selected by a sponsor." Dkt. No. 90. at 28. Relying on a single sentence from the lengthy prosecution history, the defendants argued before Judge Payne that during

8

prosecution the applicant conceded that a consumer must be selected "based on demographic and psychographic criteria." The sentence on which the defendants rely reads: "Applicant asserts that from any fair reading of the claims, it should be clear to those skilled in the art how the consumer user is awarded, and how a consumer user is selected by a sponsor based on demographic and psychographic (behavior based demographic) criteria, as required by the first Examiner to place the claim in condition for allowance." Dkt. No. 53, at 106.

Judge Payne noted that nothing in the claim language or the specification supports the defendants' contention. Rather, the claim language requires only that the selection of award unit items be tailored to demographic and psychographic preferences of the consumer user, not that the consumer user be selected based on those preferences. Moreover, as Judge Payne observed, the examiner had not required that the consumer user be selected based on demographic and psychographic preferences, but "only required that a sponsor designate an award/consumer and that the award be tailored to the preference of a consumer." Dkt. No. 90, at 27. Finally, Judge Payne pointed out that in the passage relied upon by the defendants the applicant was not arguing for a narrow claim scope or seeking to distinguish prior art, but was responding to the argument that the claim language was indefinite. The sentence on which the defendants rely is thus best viewed as a clumsy effort to convey that the claims show how the consumer user is awarded, and how the consumer user's award is based on demographic and psychographic criteria. The Court agrees with Judge Payne's analysis and conclusion in that regard.

b. Judge Payne construed the term "provider" to mean "individual or company that offers or provides an incentive program or provides awards associated with an incentive program." Dkt. No. 90, at 40. During the claim construction proceedings, the defendants argued

9

that the proper construction of "provider" is an "individual or company that provides an incentive program." The defendants argue that Judge Payne's broader construction is contrary to the specification.

The Court agrees with Judge Payne's construction. As Judge Payne pointed out, several of the claims use the term "provider" to refer to providers of an incentive program, and other claims use the term "provider" to refer to providers of awards. Thus, as Judge Payne concluded, "the claim language indicates that the term 'provider' is used broadly and includes an individual or company that offers or provides an incentive program, as well as an individual or company that provides awards associated with an incentive program." Dkt. No. 90, at 38.

For the foregoing reasons, the defendants' motion for reconsideration of the claim construction order previously issued in this case is DENIED.

It is so ORDERED.

SIGNED this 28th day of July, 2014.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE